**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Andres Galindo, Andres Galindo, Jr., Juan C. Ontiveros** and **Armando Nicasio**, individually and on behalf of all persons similarly situated and as members of the Collective as permitted under the Fair Labor Standards Act, | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| **Steve Piper & Sons, Inc.**, and **Steve Piper**, as an individual under FLSA and Illinois Wage Laws, | ) ) ) ) |
| Defendants. | ) ) |
| **Steve Piper & Sons, Inc.**, | ) ) |
| Counter-Plaintiff, | ) ) |
| v. | ) ) |
| **Jose Monarrez**, | ) ) |
| Counter- Defendant. | ) ) |

Case No. 1:21-cv-01822

Honorable John R. Blakey
Magistrate Judge Gabriel A. Fuentes

**JURY TRIAL DEMANDED ON ALL COUNTS**

**DEFENDANTS, STEVE PIPER & SONS, INC., AND STEVE PIPER'S RESPONSE IN OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL MOTION FOR CLASS CERTIFICATION OF ILLINOIS MINIMUM WAGE LAW OVERTIME CLASS CLAIMS [ECF NO. 169]**

HOWARD & HOWARD ATTORNEYS PLLC

**TABLE OF CONTENTS**

TABLE OF EXHIBITS ................................................................................................ ii

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION .......................................................................................................1

I.      RELEVANT FACTUAL BACKGROUND ....................................................7

      A.     Piper's Business Operations Are Broad.................................................7

II.     ARGUMENT .....................................................................................................8

      A.     Rule 23 Class Certifications of Illinois Wage Law Claims in FLSA Collective Actions are not Favored in this District...............................8

      B.     Plaintiffs Cannot Satisfy the More Stringent Rule 23 Standard ...........................................................................................11

      C.     Plaintiffs Fail to Satisfy The Requirements Of Rule 23(a).................11

            1.     Plaintiffs Fail to Establish There are Common Questions of Law or Fact12

            2.     Plaintiffs' Personal Claims Preclude Satisfaction of the Typicality and Adequacy Requirements .........................................15

      D.     Plaintiffs Cannot Meet the Predominance Requirements of Rule 23(b)(3) Because Resolving Their Claims Requires Individualized Analysis .......................................................................18

            1.     Individualized Fact Inquiries are Required to Determine Each of the Putative Class Representatives' Claims.................................................19

            2.     The Company's Pay Policies Cannot be the Basis of a Rule 23(a) or (b) Class Action.................................................20

      E.     Damages and Liability Cannot Be Determined on a Class-Wide Basis ...........................................................................................21

      F.     The Class Action Method is not Superior Under Rule 23(b)(3).......................................................................................22

            1.     Plaintiff Offers No Trial Plan That Addresses Manageability Problems 22

            2.     Resolving The FLSA Collective Action Claims and the Rule 23 Claims Simultaneously Undercuts The Rule 23(b)(3) Superiority Factors .........23

CONCLUSION..........................................................................................................25

HOWARD & HOWARD ATTORNEYS PLLC

**TABLE OF EXHIBITS**

**Exhibit A**    Classifications of Employees According to Workers Comp Carrier (Bates Nos. PIPER_H2 000352, PIPER_H2 000371, PIPER_H2 000399, PIPER_H2 000903-04, PIPER_H2 000922-24, PIPER_H2 001004-05, and PIPER_H2 001062-63)

**Exhibit B**    Foremen (Bates Nos. PIPER_H2 000417)

**Exhibit C**    Gilberto Camacho – Tree Pruning (Bates Nos. PIPER_H2 000593-629)

**Exhibit D**    Andres Galindo, Jr. – Pulp Manufacturing (Bates Nos. PIPER_H2 000638-679)

**Exhibit E**    Jose F. Galindo – Pulp Manufacturing (Bates Nos. PIPER_H2 000689-702)

**Exhibit F**    Ivan Garibay – Landscape (Bates Nos. PIPER_H2 000708-727)

**Exhibit G**    Efrain Gomez – Landscape (Bates Nos. PIPER_H2 000732-743)

**Exhibit H**    David Landa – NOC (Bates Nos. PIPER_H2 000744-748)

**Exhibit I**    Josue Landa – NOC (Bates Nos. PIPER_H2 000752-769)

**Exhibit J**    Jorge Lara – Tree Pruning (Bates Nos. PIPER_H2 000775-780)

**Exhibit K**    Cesar Monarrez – NOC (Bates Nos. PIPER_H2 000782-820)

**Exhibit L**    Jose Luis Aguilar – NOC (Bates Nos. PIPER_H2 000591)

**Exhibit M**    Jose Federico Monarrez – NOC (Bates Nos. PIPER_H2 000788-820)

**Exhibit N**    Armando Nicasio – Tree Pruning (Bates Nos. PIPER_H2 000829-856)

**Exhibit O**    Juan Ontiveros – Store/Hardware (Bates Nos. PIPER_H2 000864-875)

**Exhibit P**    Tyler Weeks – Landscape (Bates Nos. PIPER_H2 000880-889)

**Exhibit Q**    Depositions of Steven P. Piper

**Exhibit R**    Depositions of Holly A. Morlock

**Exhibit S**    Deposition of Dan Engelhardt

**Exhibit T**    Declaration of Stephen P. Piper

**Exhibit U**    Employee Consents (Bates Nos. Piper_H2 000323-351)

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Accord Pavone v. Meyerkord and Meyerkord, LLC,* 321 F.R.D. 314 (ND IL 2017) ............................................................................................................ 20

*Alakozai v. Chase Inv. Servs. Corp.*, No. 11-CV-09178 SJO JCX, 2014 WL 5660697 (C.D. Cal. Oct. 6, 2014) ...................................................... 20

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ............................. 18

*Bunyan v. Spectrum Brands, Inc.*, No. 07-cv-0089-MJR, 2008 WL 2959932 (S.D. Ill. Jul. 31, 2008) ................................................................ 13

*Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780 JNE/JJG, 2006 WL 2830015 (D. Minn. Sept. 26, 2006) ........................................... 19

*CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011) .......................................................................................................... 15, 16

*Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998) ................................ 23

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ............................................. 21

*Cruz v. Lawson Software, Inc.,* 764 F. Supp. 2d 1050 (D. Minn. 2011) ...................................... 13

*Dailey v. Groupon, Inc.*, No. 11 C 05685, 2014 WL 4379232 (N.D. Ill. Aug. 27, 2014) .................................................................. 12, 14, 19, 21

*De Asencio v. Tyson Foods*, 342 F.3d 301 (3rd Cir. 2003) ...................... 10, 24

*De La Fuente v. FPM Ipsen Heat Treating, Inc.,* No. 02 C 50188, 2002 WL 31819226 (N.D.Ill. Dec.16, 2002) .................................................... 9

*De La Riva v. Houlihan Smith & Co.*, 848 F. Supp. 2d 887 (N.D. Ill. 2012) ............................. 23

*Diaz v. Elecs. Boutique of Am., Inc.,* No. 04-cv- 0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ................................................... 14

*Espenscheid v. Direct Sat, USA LLC*, 873 F.3d 873 (7th Cir. 2012) ................................ 21, 23

*Farmer v. DirectSat USA, LLC*, No. 08 CV 3962, 2013 WL 2457956 (N.D. Ill. June 6, 2013) ........................................................................... 21

*Franks v. MKM Oil, Inc.*, No. 10 cv 00013, 2012 WL 3903782 (N.D. Ill. Sept. 7, 2012) ........................................................................................... 22

*Gen. Tele. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) ...................... 12, 15

*Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088 (D. Kan. 2012) .......................................................................................................... 13

*Helfand v. Cenco, Inc.*, 80 F.R.D. 1 (1977) ................................................ 18

*Hill v. R and L Carriers*, No. C 09-1907 CW, 2011 WL 830546 (N.D. Cal. Mar. 3, 2011) ......................................................................................... 20

*Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165; 110 S.Ct. 482; 107 L.Ed.2d 480 (1989) ........................................................................................ 9

*Hundt v. Direct Sat USA, LLC*, 294 F.R.D. 101 (N.D. Ill. 2013) ............................ 19

*In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5 (SD NY 2020) .............................. 21

*In Re Bank of Am.*, 286 F.R.D. 572 (D. Kan. 2012) ................................................ 11, 19

*In Re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ................................ 22

*In Re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009) ..................................................................................... 14

*Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121 (N.D. Ill. 2017) ....................... 11

*J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994 (7th Cir. 1980) ....................................................................................... 16

*Koos v. First Nat'l Bank*, 496 F.2d 1162 (7th Cir. 1974) ......................................... 16

*Matthews v. Waukesha County*, 937 F.Supp.2d 275 (ED Wis. 2013) .......................... 1

*McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574 (N.D.Ill.2004) ..................... 8, 9, 22

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-04457-YGR, 2016 WL 879784 (N.D. Cal. Mar. 8, 2016) .................................................... 17

*Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802 (7th Cir. 2012) ..................... 18

*Mickles v. Country Club Inc.*, 887 F.3d 1270 (11th Cir. 2018) ................................. 2

*Muecke v. A–Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 WL 1359411 (N.D.Ill. June 21, 2002) ...................................................... 9

*Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745 (N.D. Ill. 2011) ....................................................................................... 11

*Oetinger v. First Residential Mortg. Network, Inc.*, No. CIV. 3:06-cv-381, 2009 WL 2162963 (W.D. Ky. Jul. 16, 2009) ............................................ 14

*Rodriguez v. The Texan, Inc.*, No. 01 C 1478, 2001 WL 1829490 (N.D.Ill. Mar. 7, 2001) ..................................................................................... 9, 10

*Romero v. H.B. Automotive Grp., Inc.*, No. 11-cv-386, 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ............................................................... 14

*Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560 (7th Cir. 2012).......................... 12

*Smith v. Family Video Movie Club, Inc.*, 311 F.R.D. 469 (N.D. Ill. 2015) ................. 11

*Spainhower v. U.S. Bank Nat'l Ass'n*, No. 2:08-CV-00137-JHN-PJWx, 2010 WL 1408105 (C.D. Cal. Mar. 25, 2010).................................................. 20

*Susman v. Lincoln Am. Corp.*, 561 F.2d 86 (7th Cir. 1977) ...................................... 17

*Tamas v. Family Video Movie Club, Inc.*, No. 11 C 1024, 2013 WL 4080649 (N.D. Ill. Aug. 13, 2013).................................................................... 11

HOWARD & HOWARD ATTORNEYS PLLC

*Till v. Saks, Inc.*, No: C-11-00504 SBA, 2013 WL 5755671 (N.D. Cal. Sept. 30, 2013) .................................................................................................. 14

*TS v. Twentieth Century Fox Television*, 334 F.R.D. 518 (ND IL 2020) ..................................... 20

*Van v. Ford Motor Co.*, No. 14-CV-8708, 2019 WL 3976370 (N.D. Ill. Aug. 22, 2019) .............................................................................................. 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................ 11, 12, 13

*Warner v. Little John Transportation Servs., Inc.*, No. 5:19-cv-05042, 2019 WL 3331797 (W.D. Ark. July 24, 2019) ................................................... 24

*Weston v. Emerald City Pizza, LLC,* 137 Wash. App. 164 (Wash. App. 2007) ............................................................................................................. 14

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.) ............................................. 23

**<u>Statutes</u>**

28 U.S.C. § 1367(a) ...................................................................................................... 10

28 U.S.C. § 1367(c) ...................................................................................................... 24

29 U.S.C. § 216(b) ..................................................................................................... 2, 9

Illinois Minimum Wage Act, 820 ILCS 105/1 .................................................... passim

Illinois Wage Payment and Collection Act, 820 ILCS 115/1 ............................... 1, 8, 25

**<u>Rules</u>**

Fed. R. Civ. P. 23 ...................................................................................................... passim

Fed. R. Civ. P. 23(a) ........................................................................................................ 11

Fed. R. Civ. P. 23(a)(2) ................................................................................................... 20

Fed. R. Civ. P. 23(a)(4) ............................................................................................. 15, 17

Fed. R. Civ. P. 23(b)(3) ............................................................................................. 18, 22

Fed. R. Civ. P. 23(b)(3)(A)-(D) ...................................................................................... 22

*Pavone v. Aegis Lending Corp.*, No. 05 C 1529, 2006 WL 2536632 (N.D. Ill. Aug. 31, 2006) ...................................................................................... 18

Defendants STEVE PIPER & SONS, INC. and STEVE PIPER, INDIVIDUALLY (hereafter collectively "Piper" or "Defendants") by and through their undersigned attorneys, L. STEVEN PLATT and the law firm of HOWARD & HOWARD ATTORNEYS PLLC, in opposition to Plaintiffs' Supplemental Motion for Class Certification of Illinois Minimum Wage Law Overtime Class Claims [ECF No. 169], state as follows:

## **INTRODUCTION**

Although there is virtually no interest in this lawsuit with only ten opt-ins following notice[1] (with one of the three putative class representatives, Juan Ontiveros, calling the Defendant directly and leaving word that he wants to talk about settling his case),[2] Plaintiffs' counsel now seeks to certify a class for on an unspecified number of Rule 23 class members.[3] It is sought under the pendent state claims under the Illinois Minimum Wage Act, 820 ILCS 105/1 ("IMWL") and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 ("IWPCA") because The Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201, *et seq.* ("FLSA")

---

[1] ECF Docket Nos. (hereafter "Dkt#__") 25, 26, 28, 53, 59, 61, 62, 64, 67; Ex. Q, Declaration of Steve Piper at ¶ 51 (hereafter "Ex. T, Piper Dec."). Because the depositions of Steve Piper were limited only to topics the Plaintiffs wanted to discuss, a supplemental declaration by Steve Piper is attached to this response. A sworn self-serving declaration or affidavit is admissible in response to a motion like this so long as it is based on facts personally known by the declarant. *Matthews v. Waukesha County*, 937 F.Supp.2d 275 (ED Wis. 2013)(Although self-serving statements in affidavits without factual support in the record carry no weight, a self-serving affidavit supported by facts in the record can defeat summary judgment, and the record may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial.).

[2] The call was April 24, 2023. Defendant did not talk to him or return his call because he is represented by counsel. We advised his counsel of the attempted contact.

[3] Plaintiff's Memorandum in Support of Class Certification, Dkt# 168, at 8-9 (hereafter "Pl. Mem. at __").

only permits collective actions.[4] Certification is sought by only three of the four original named Plaintiffs offered as class representatives.[5]

There are many problems with this motion. For one, Plaintiffs have thrown the lead Plaintiff, Andres Galindo, Sr., overboard, because he has no cognizable claim under any legal theory. He was an at will employee who was "exempt" because among other things he was the highest paid employee in the company (paid $105,827.40 in 2018, $106,129.20 in 2019 and $107,912.80 in 2019).[6] He had wide discretionary authority to order parts, tires and mechanical repairs.[7] He set schedules for yard workers, mulch/firewood workers, and production crews.[8] He was responsible for hiring which is why there were so many of his relatives and friends working for the company.[9] And, he initiated and enforced discipline.[10]

For another, with respect to the remaining three Plaintiffs, one of them, Juan Ontiveros, was a truck driver during the relevant time-period.[11] Plaintiffs are not seeking to include truck drivers in their class. [*See* Plaintiff's Ex. 9 (hereafter "PX"), ECF Docket No. (hereafter "Dkt# __") 169-10; and Pl. Mem. at 4]. That leaves two Plaintiffs as putative class representatives.

HOWARD & HOWARD ATTORNEYS PLLC

---

[4] The procedure for bringing an FLSA collective action is governed by 29 U.S.C. § 216(b) (§ 216(b)) (*see Mickles v. Country Club Inc.*, 887 F.3d 1270, 1275-76 (11th Cir. 2018)). § 216(b) is similar to Federal Rules but significant differences exist between FLSA collective actions and Rule 23 class actions. In contrast, an individual wishing to participate in an FLSA collective action must affirmatively "opt in" to the lawsuit. Until the individual files a written consent to join the lawsuit, they are not considered part of the collective action. (29 U.S.C. § 216(b)).

[5] Pl. Mem. at 1, fn1.

[6] Ex. T, Piper Dec., ¶ 61.

[7] Ex. T, Piper Dec., ¶¶ 57-63.

[8] Ex. T, Piper Dec., ¶ 65.

[9] Ex. T, Piper Dec., ¶¶ 68. He had his two sons working at the company, one of whom is seeking to be a class representative, the other is an opt-in. [Ex. T, Piper Dec., ¶¶ 51, 67], Another of the named class representatives grew up with Galindo, Sr.'s sons and is a childhood friend. [Ex. T, Piper Dec., ¶ 84], Another of the opt-ins is a family friend of Galindo, Sr.'s sons. [Ex. T, Piper Dec.¶ 138], Two more opt-ins are Galindo brothers-in-law. [Ex. T, Piper Dec., ¶ 51],

[10] Ex. T, Piper Dec., ¶ 69.

[11] Ex. T, Piper Dec., ¶¶ 86, 89.

With respect to them, they only performed two of the 18 different job classifications at this Company.[12] They performed different job duties and had different work schedules.[13] They had different break schedules.[14] They worked for different rates of pay which are set by the Company by job classification.[15] Both of them were terminated and one has a history of being terminated for theft.[16] They worked at the Company at different time-periods and both are ex-employees who were gone from the Company by January 4, 2021,[17] three-months before this lawsuit was filed on March 21, 2021. [Dkt.# 1]. This fixes the three-year look back period as March 21, 2018 – January 4, 2021.

Plaintiff's Memorandum does not tell us the size of the class. They say alternatively that it is "a minimum of 60-70 laborers" [Pl. Mem. at 8] and then claim it is "seventy-six (76) laborers" [Pl. Mem. at 9], ignoring the fact that their own Exhibit [PX 4, Dkt# 169-5] shows that Defendant twice denied it ever employed "76 laborers" during the relevant time-period. [*See* Response to Plaintiffs' Second Request to Admit, PX 4 at 1, and 2 in response to Requests 31 and 36]. Defendants' denial that the putative class consists of "76 laborers" is highlighted by Plaintiffs' counsel in blue at page 2, of PX 4.

Their authority for lumping the Company's employees into a single class of "laborers" is a hearsay document [Dkt# 169-10, PX 9], prepared for litigation purposes only according to categories requested by Plaintiffs. It is not a business record prepared in the ordinary course of business.[18] Yet even this document does not classify all workers into "laborers." It classifies

---

[12] Ex. T, Piper Dec., ¶¶ 17, 20, 73-91.
[13] Ex. T, Piper Dec., ¶¶ 20-28, 73-91.
[14] Ex. T, Piper Dec., ¶¶ 40-46, 99-101,
[15] Ex. T, Piper Dec., ¶¶ 19-20, 30-39.
[16] Ex. T, Piper Dec., ¶¶ 81-82, 85.
[17] Ex. T, Piper Dec., ¶¶ 77, 81, 92, 96-97.
[18] Ex. T, Piper Dec., ¶¶ 9-13.

them into six categories: 1) basic arborists, 2) laborer[s], 3) office, 4) sales, 5) supervisors and 6) truck drivers. [PX 9; Pl. Mem. at 8-9; Ex. T, Piper Dec., ¶¶ 9-13].

If we look closely at PX 9, we see that they highlight in yellow all people they are excluding from the class (arborists, office workers, supervisors, sales people and truck drivers.) This means that one of the three named putative class representatives, Juan Ontiveros, is not proper. He worked as a truck driver, a category excluded by Plaintiffs' certification request.[19]

Then there is the question of numerosity. Given that there are 18 separate job classifications at this employer, there is no way any individual putative class representative could possibly represent anything other than a *de minimus* class. It is Plaintiff's burden on this motion to prove numerosity. Galindo, Jr., was a mulch grinder and occasional equipment operator.[20] How many mulch grinders and equipment operators have there been in the three-year period prior to the lawsuit? Nicasio was a tree trimmer.[21] How many of those were there?

While Plaintiff has not carried their burden on numerosity, we can show the lack of numerosity. If we use the workers' compensation carrier's classification of the Company's employees which is a business record,[22] we can see that Galindo, Jr. is listed under "Pulp Manufacturing."[23] According to the Company's business records there were only two of those over the relevant time-period including Galindo, Jr.[24] [DX A].

---

[19] Pl. Mem. at 4; Ex. T, Piper Dec., ¶ 89.

[20] Ex. T, Piper Dec., ¶ 75.

[21] Ex. T, Piper Dec., ¶ 80.

[22] Ex. T, Piper Dec., ¶ 16.

[23] Defendants' Ex. D (hereafter "DX __"), Bates No. SPSI&SP (hereafter shortened to "SPI") 638-679.

[24] Galindo, Jr., PX D, Bates No. SPI 638-679; Jose F. Galindo, PX E, Bates No. SPI 689-702.

Nicasio is listed under "Tree Pruning." [DX N, Bates Nos. SPI 829-856], Company business records show there were only three of those including Nicasio.[25]

Ontiveros was as a truck driver when he was rehired in July of 2018.[26] PX 9 shows there were only five of those during the relevant time-period but it is irrelevant because Plaintiffs are not seeking to establish truck drivers as members of their putative class. [PX 9; Pl. Mem. at 4].

At this stage in the litigation the court is finally being asked to consider whether class status should be granted on the Illinois claims in this case. Plaintiffs' current motion is its "Supplemental" Motion for Class Certification. Plaintiffs' original Motion for Class Certification was filed on May 25, 2022 [Dkt.#s 75-79], and has not been acted on for ten months.[27] This motion is being briefed 25-months after this lawsuit was filed on March 21, 2021. [Dkt.# 1].

The undersigned counsel substituted in for prior Defense counsel, Houck Bouma in October of 2021. As Plaintiffs note in their Memorandum, prior counsel "filed a response stating non-opposition to the Motion. Dkt. No. 91." [Pl. Mem. at 3], While this is technically correct, it is also technically incorrect. What prior counsel said in their filing was

> Defendants do not oppose Plaintiffs' motion *for initial* certification of their alleged class claims under the Illinois Minimum Wage Law. However, to be clear, Defendants do not concede any allegations contained in the Motion and specifically reserve all defenses, including without all defenses and objections with respect to the admissibility of evidence and exhibits attached to the Motion. Further, although Defendants do not oppose Plaintiffs'

---

[25] Armando Nicasio, [PX N, Bates No. SPI 829-856]; Jorge Lara [PX J, Bates No. SPI 776-780]; Gilberto Camacho, PX C, Bates No. 593-629.

[26] Ex. T, Piper Dec., ¶¶ 86, 89.

[27] Plaintiffs' Counsel notes that their original motion filed 14-months after this lawsuit was filed, was not opposed by prior counsel who we have substituted for. This means that it has taken Plaintiffs 24-months since this lawsuit was filed, to actively request class action status for this case. Plaintiffs' counsel seem to put this delay on this court, saying that the court did not act on their motion because of representations made in subsequently filed status reports. [PSM at 3]. We have made it clear as subsequent counsel, that we do not continue Piper's lack of objection to a certified class. We oppose it, strongly. There were many serious mistakes made by prior counsel in this case and this is one of them. So the record is clear, we oppose class certification for the reasons set forth in this memorandum.

HOWARD & HOWARD ATTORNEYS PLLC

> motion *for initial certification* of their alleged class claims under the Illinois Minimum Wage Law, Defendants object to lead Plaintiff, Andres Galindo, being named and certified as a class representative as he is not a proper class representative of the proposed class as he was an exempt non-hourly employee of SPSI. Additionally, although Defendants do not oppose Plaintiffs' motion *for initial certification* of their alleged class claims under the Illinois Minimum Wage Law, *Defendants neither admit nor deny whether counsel for Plaintiffs will fairly and adequately protect the interests of the proposed class for lack of knowledge.*

Dkt# 91. [*Emphasis added*]. This is not a blank check issued to certify a class of "laborers" who worked at Defendant. It is a statement of non-opposition. Discovery has occurred since and as shown above, discovery does not justify the putative class proposed in any of Plaintiffs' requests for certification.

We would not have taken this position on Plaintiffs' initial Class Certification Motion and consider it improper. Perhaps this court recognized this and therefore did not conditionally certify the class. For whatever reason this court did not act on Plaintiffs' Motion and then, as Plaintiffs' counsel correctly states, "subsequent representations in status reports and motions" caused the court to defer ruling. [Pl. Mem. at 3]. We as Defendants' current counsel, have opposed class certification from the start. Our opposition has been borne out by the discovery results and facts we note above.

Resolving this case on a class-wide basis is impossible as a matter of law and facts because the groups the Plaintiffs seek to represent are too small. They fail to meet Rule 23's commonality and predominance requirements.

In addition, the Plaintiffs three individual cases are not typical of the putative class members' "laborers" claim. One of the putative class Plaintiffs, Juan Ontiveros, was a CDL driver who is not in a class of individuals Plaintiffs seek to represent. The other two are in different classifications creating conflicts and preventing Plaintiffs from adequately protecting

the interests of the proposed laborer class. This potentially jeopardizes the due process rights and prejudices the claims of absent class members, leaving any judgment susceptible to collateral attacks. This outcome is precisely what the typicality and adequacy requirements of Rule 23(a)(3) and (4) were designed to prevent.

Finally, a class action is not a superior method of adjudication in this instance because potential class members are highly specialized workers whose individual claims, if any, are not served by representative litigation. Class treatment is not superior given the tension between the opt-in and opt-out procedures of the FLSA and Rule 23, with a putative class of individuals that is six times the size of the 10-person conditionally certified opt-in collective action. If certified, the Rule 23 state law claims will "substantially predominate" such that the Court should decline to exercise supplemental jurisdiction over them. For these reasons, Plaintiffs' Motion for Class Certification should be denied.

## I.     <u>RELEVANT FACTUAL BACKGROUND</u>

### A.     **Piper's Business Operations Are Broad**

Steve Piper & Sons, Inc. ("Piper" or "the Company") is a tree care business that primarily does tree trimming, pruning, removal and installation. Some members of the tree crews are Certified Basic Arborists who have been certified by the Illinois State Arborist Association ("ISA Certified Arborists).[28]

The Company also does snow plowing in the winter months. It makes and sells firewood and mulch which it sells in bulk. "Firewood splitters" manufacture firewood.[29] Pictures of the machinery used by firewood splitters are contained in Exs. 5 and 6 attached to Ex. T, Piper Dec.,

---

[28] Ex. T, Piper Dec., ¶ 4.

[29] Ex. T, Piper Dec., ¶ 17(b); Ex. Q, Piper Dep.1 at 24. Piper was deposed three times in this case. All three depositions are contained in Ex. Q. Because the transcripts are not sequentially numbered, the reference to "Piper 1" means the Piper dep taken on August 1, 2022. "Piper 2" is the deposition taken on December 1, 2022. "Piper Vol II" means the deposition taken on March 8, 2023 marked improperly by the Court Reporter as "Volume II".

HOWARD & HOWARD ATTORNEYS PLLC

¶ 29(b). A picture of firewood bundled in wholesale quantities is attached as Ex.10 to Ex. T, Piper Dec. The Company manufactures several diverse types of natural mulch and color enhanced mulch. The mulch manufactured is triple processed.[30]

Tree crews work in the field doing tree work. Tree crews include "brush draggers,"[31] tree crew workers[32] and tree trimmers.[33] Some of the tree trimmers are "Certified" tree trimmers which is something else.[34]

Mulch grinders make mulch from tree products.[35] The machine used by mulch grinders is depicted in the photos attached to Ex. T, Piper Dec., as Exs. 7 and 9. Mulch grinders are distinct from mulch installers which is a different category of workers.[36]

## II. ARGUMENT

### A. Rule 23 Class Certifications of Illinois Wage Law Claims in FLSA Collective Actions are not Favored in this District

A number of courts in this district have rejected attempts by Plaintiffs to certify a class action based on the IMWL and IWPCA, while simultaneously asserting a "collective" action under the FLSA. *See, e.g., McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 n.4 (N.D.Ill.2004). As Judge Castillo reasoned in *McClain*, this could create "the rather incongruous situation of an FLSA 'class' including only a tiny number of employees . . . with a state-law class that nonetheless includes all or nearly all of the companies' present or former employees. To do so would effectively allow a federal tail to wag what is in substance a state dog." *McClain*, 222 F.R.D. at 577 (citations omitted).

---

[30] Ex. T, Piper Dec., ¶ 5.
[31] Ex. T, Piper Dec., ¶ 17(a); Ex. Q, Piper Dep.1 at 45.
[32] Ex. T, Piper Dec., ¶ 17(l); Ex. Q, Piper Dep.1 at 46.
[33] Ex. T, Piper Dec., ¶ 17(m).
[34] Ex. T, Piper Dec., ¶ 17(n); Ex. Q, Piper Dep.1 at 45.
[35] Ex. T, Piper Dec., ¶ 17(g); Ex. Q, Piper Dep.1 at 31; Piper Dep. Vol II at 63.
[36] Ex. T, Piper Dec., ¶¶ 17(g) and (h).

HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

Congress created the opt-in procedure "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions." *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). The FLSA's opt-in provision directly contrast with Rule 23's opt-out scheme and demonstrates Congress's intent to ensure that parties with wage and hour claims under the FLSA take affirmative steps to become members of a class seeking redress of those claims in federal court. 29 U.S.C. § 216(b).

Noting these considerations, several courts in the Northern District have refused to certify a class action for supplemental state-law claims in the same proceeding as a FLSA collective action. *See De La Fuente v. FPM Ipsen Heat Treating, Inc.,* No. 02 C 50188, 2002 WL 31819226, at *1 (N.D.Ill.Dec.16, 2002); *Muecke v. A–Reliable Auto Parts & Wreckers, Inc.,* No. 01 C 2361, 2002 WL 1359411, at *2 (N.D.Ill. June 21, 2002); *Rodriguez v. The Texan, Inc.,* No. 01 C 1478, 2001 WL 1829490, at *2 (N.D.Ill. Mar.7, 2001); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004).

In this case allowing Plaintiffs to use supplemental state-law claims to certify an opt-out class in federal court would undermine Congress's intent to limit these types of claims to collective actions. The Plaintiffs here cannot circumvent the opt-in requirement and bring unnamed parties into federal court by calling on state statutes similar to the FLSA that lack the opt-in requirement. *Rodriguez*, 2001 WL 1829490, at *2. Were the court to certify a class for the Plaintiffs' supplemental state claims based on the same facts and issues underlying their federal claims, we could be left "with the rather incongruous situation of an FLSA 'class' including only a tiny number of employees ... with a state-law class that nonetheless includes all or nearly all of the companies' present or former employees." *Muecke,* 2002 WL 1359411, at *2. To do so

9

would effectively "allow [ ] a federal tail to wag what is in substance a state dog." *De Asencio v. Tyson Foods*, 342 F.3d 301, 310 (3rd Cir. 2003).

Denying class certification in this case is also supported by the scope of supplemental jurisdiction under 28 U.S.C. § 1367(a). This section provides that "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." As Judge Shadur noted in *Rodriguez*, this language "plainly betokens *actual* joinder or intervention, not the type of representative treatment that is sought by [the plaintiff] . . . ." *Rodriguez*, 2001 WL 1829490, at *2 (emphasis in original). In other words, while § 1367(a) allows parties to join their state claims to federal claims, it does not contemplate a Plaintiff using supplemental jurisdiction as a rake to drag in as many members as possible into what would otherwise be a federal collective action.

That is what the Plaintiffs are attempting here. There are only 10 opt-ins, with seven of the 10 opt-ins being related to the Galindos.[37] One of the three putative class members recently sought to settle his own case.[38] Two of the three putative class members are related to the Galindos.[39] with the lead Plaintiff, Galindo, Sr., being an inappropriate Plaintiff because he is exempt. He was as the highest paid employee in the Company and fails the duties test.[40] Allowing the Plaintiffs to certify the pendent state claims as an opt-out class would be dragging in as many members as possible to an opt-in FLSA case where there is no interest.

---

[37] Ex. T, Piper Dec., ¶¶ 50-51, ¶ 73 (Andres Galindo, Jr. is Galindo, Sr.'s son), ¶ 51 (Armando Nicasio is a childhood friend of the Galindo sons), ¶ 84 (Juan Ontiveros is childhood friends of the Galindo sons), ¶ 125 (José Fernando Galindo is Galindo, Sr's son), ¶ 138 (Ivan Garibay is childhood friends of the Galindo sons), ¶ 144 (David Landa is the brother-in-law of Galindo, Jr.), ¶ 153 (Josue Landa is David Landa's brother and is also a brother-in-law of Galindo, Jr.).

[38] See note 2, *supra.*

[39] Ex. T, Piper Dec., ¶¶ 50-51 Galindo, Jr. is Galindo, Sr.'s son; ¶¶ 50-51, 84 Juan Ontiveros is childhood friends of the Galindo sons.

[40] Ex. T, Piper Dec., ¶¶ 55-69.

### B.     Plaintiffs Cannot Satisfy the More Stringent Rule 23 Standard

Here, the Plaintiffs are not seeking conditional certification of a collective action under the FLSA which does not implicate the more stringent Rule 23 standards for class certification. "[T]he Rule 23 standard for certification is significantly more demanding than the lenient standard for conditional FLSA certification." *Smith v. Family Video Movie Club, Inc.*, 311 F.R.D. 469, 472 (N.D. Ill. 2015); *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 755 (N.D. Ill. 2011) ("the FLSA's 'similarly-situated requirement has been interpreted as 'considerably less stringent' than that applied to class actions certified under Rule 23.'"); *see also*, *Tamas v. Family Video Movie Club, Inc.*, No. 11 C 1024, 2013 WL 4080649, at *4, 8 (N.D. Ill. Aug. 13, 2013) (granting conditional certification but denying Rule 23 certification because plaintiff "fails to meet the more stringent requirement of predominance under Rule 23"); *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1136-37 (N.D. Ill. 2017) (conditional certification does not require establishing adequacy).

Plaintiffs cannot meet the significantly higher burden imposed by Rule 23 for class certification of the pendent state action. This warrants denial of the Motion.

### C.     Plaintiffs Fail to Satisfy The Requirements Of Rule 23(a)

Class certification requires Plaintiffs to show that: (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These requirements do "not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, class "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *In Re Bank of Am.*, 286 F.R.D. 572, 578 (D. Kan. 2012). The U.S. Supreme Court has recognized this

"rigorous analysis" will frequently involve the merits of the plaintiffs' underlying claims. *Id.* (citing *Gen. Tele. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). As such, this Court should "probe behind the pleadings before coming to rest on the certification question." *Id.* (quotation omitted).

Plaintiffs have the "burden at the class-certification stage to demonstrate, under Rule 23, that resolving this exemption issue on a class-wide basis is appropriate." *Dailey v. Groupon, Inc.*, No. 11 C 05685, 2014 WL 4379232, at *4 (N.D. Ill. Aug. 27, 2014). As outlined below, given the nature of Plaintiffs' claims and the record evidence, Plaintiffs cannot meet this burden because the determination of the Plaintiffs' cases as discussed and demonstrated above "requires a thorough, fact-intensive analysis of the employee's employment duties and responsibilities." *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012).

### 1. Plaintiffs Fail to Establish There are Common Questions of Law or Fact

The commonality requirement in Rule 23(a)(2) requires Plaintiffs to show that their claims depend on a common contention or question, and more importantly that the action "is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. In *Wal-Mart,* the Supreme Court cautioned that the language regarding the commonality requirement is "easy to misread, since any competently crafted class complaint literally raises common questions." *Id.* at 2250-51 (reasoning that reciting common questions such as whether there is an unlawful employment practice is not sufficient to obtain class certification). The Supreme Court explained: "[w]hat matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

HOWARD & HOWARD ATTORNEYS PLLC

Plaintiffs fail to identify common questions, much less "common answers" within the meaning of *Wal-Mart.* Plaintiffs' asserted common question – whether Defendant had common pay practices of not paying overtime at the correct rate – is precisely the type of question that *Wal-Mart* found insufficient. (ECF No. 146 at 11). *See Wal-Mart,* 131 S. Ct. at 2250-51. While framed as a common question, Plaintiffs fail to demonstrate that the question "is capable of generating common answers." *Id.* at 2251. Although Plaintiffs assert this question will be answered with common proof, the "proof" that Plaintiffs offer is insufficient.

For example, Plaintiffs rely on the fact that the Plaintiffs allegedly are all "laborers" and they are all hourly. As we have shown above, they cannot be all lumped into an artificial class of "laborers" and non-laborers. There are 18 different job classifications for these employees and even the workers compensation insurance classifies Defendants' employees into seven groups.[41]

Even if Defendants commonly classified all of its non-office and non-driver employees as laborers (Pl. Mem. at 4; PX 9), common job descriptions and the common classifications of employees are insufficient bases for class certification. *See e.g., Bunyan v. Spectrum Brands, Inc*., No. 07-CV-0089-MJR, 2008 WL 2959932, at * 7 (S.D. Ill. Jul. 31, 2008) (common job descriptions alone are insufficient to warrant class-wide treatment); *Cruz v. Lawson Software, Inc.,* 764 F. Supp. 2d 1050, 1057 (D. Minn. 2011) ("[t]he existence of these [common] job descriptions does not eliminate the need for the Court to conduct a detailed analysis of actual job duties"); *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1099 (D. Kan. 2012) ("merely classifying a group of employees as exempt does not automatically qualify them as similarly situated, nor eliminate the need to make a factual determination as to whether class

---

[41] Ex. T, Piper Dec., ¶¶ 9-12, 15-46.

members are actually performing similar duties"); *Oetinger v. First Residential Mortg. Network, Inc.*, No. CIV. 3:06-cv-381, 2009 WL 2162963, at *4 (W.D. Ky. Jul. 16, 2009) (same).

Plaintiffs also want to tie the Plaintiffs together because they are all hourly. (Pl. Mem. at 2-5). In *Dailey*, 2014 WL 4379232, at *5, the court rejected a similar argument that commonality was satisfied as result of "uniform training," uniform "job descriptions," and uniform "performance criteria." *Id*. The court concluded that regardless of a uniform policy, "Courts must still engage in a case-by-case analysis of the employee's duties and responsibilities." *Id*. (citing *In Re Wells Fargo Home Mortg. Overtime Pay Litig*., 571 F.3d 953, 957 (9th Cir. 2009)).

Similarly, where the alleged common issue is that they all did the same gross category of work as "laborers" regardless of their skills, training, job duties, schedules and pay, the issue of whether each of the class members are properly classified this way by the Plaintiffs, still invokes individual factual determinations into each class member's daily activities. This precludes a finding of commonality. *Diaz v. Elecs. Boutique of Am., Inc.,* No. 04-cv- 0840E(SR), 2005 WL 2654270, at *6 (W.D.N.Y. Oct. 17, 2005); *Romero v. H.B. Automotive Grp., Inc*., No. 11-cv-386, 2012 WL 1514810, at *18 (S.D.N.Y. May 1, 2012) (no commonality because whether class members were misclassified "will require individualized examinations of each plaintiffs daily responsibilities"); *see also Till v. Saks, Inc*., No: C-11-00504 SBA, 2013 WL 5755671, at *6 (N.D. Cal. Sept. 30, 2013) (no commonality in a misclassification case); *Weston v. Emerald City Pizza, LLC,* 137 Wash. App. 164, 171-73 (Wash. App. 2007) (same).

In sum, Plaintiffs fail to provide any evidence that their purported common contentions are capable of class-wide resolution, and they do not demonstrate how a central issue in this litigation will generate the common answers required by Rule 23(a)(2).

14

2.     **Plaintiffs' Personal Claims Preclude Satisfaction of the Typicality and Adequacy Requirements**

Plaintiffs' individual claims are not typical of the claims of the putative class members, and they cannot adequately represent their interests because they have three different claims which are not shared by other class members.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Claims are typical if they arise from the same course of conduct and are based on the same legal theory. *Van v. Ford Motor Co.*, No. 14-CV-8708, 2019 WL 3976370, at *19 (N.D. Ill. Aug. 22, 2019); *Gen. Tele.*, 457 U.S. 147, 150, 160, n. 2 (1982)(finding a class representative's claim for discrimination in promotion was not typical of class members' claims for discrimination in hiring). The typicality requirement often "merges" with the requirement that the class representative "fairly and adequately protect the interests of the class." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011):

> The adequacy inquiry under Rule 23(a)(4) seeks to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc v. Windsor*, 521 U.S. 591, 625-26 (1997). Plaintiffs may not maintain a class action where, as here, their interests conflict with the interests of the persons they seek to represent. *Hansberry v. Lee*, 311 U.S. 32, 44-45 (1940); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). Adequacy of representation is "one of the most significant prerequisites to a determination of class certification" and "embodies a crucial due process requirement and is not a smokescreen. *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 6-7 (N.D. Ill. 1977). A court must stringently apply this prerequisite to prevent collateral attacks after judgment by class members who claim that their interests were not vigorously and competently protected.

*Id.* at 724.

The Seventh Circuit has held that the "presence of even an arguable defense peculiar to [a] named plaintiff . . . may destroy the required typicality of the class as well as bring into question the adequacy of the named Plaintiffs' representation." *CE Design Ltd.*, 637 F.3d at 726

HOWARD & HOWARD ATTORNEYS PLLC

(citing *J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980)). "Where it is predictable that a major focus of the litigation will be an arguable defense unique to the named plaintiff . . . then the name plaintiff is not a proper class representative." *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164 (7th Cir. 1974). Indeed, "[t]he fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer." *CE Design Ltd*. 637 F.3d at 726.

Here, it is not just "predictable" that the putative class representatives' personal claims will become the "focus" at trial; it is guaranteed.

If we use the workers' compensation carrier's classification of the Company's employees which is a business record,[42] Galindo, Jr. is listed under "Pulp Manufacturing."[43] According to the Company's business records there were only two of those over the relevant time-period including Galindo, Jr.[44] [DX A].

Nicasio is listed under "Tree Pruning." [DX N, Bates Nos. SPI 829-856], Company business records show there were only three of those including Nicasio during the relevant time-period.[45]

Ontiveros was a truck driver when he was rehired in July of 2018.[46] PX 9 shows there were only five of those during the relevant time-period but it is irrelevant because Plaintiffs are not seeking to include truck drivers in the class. [PX 9; Pl. Mem. at 4].

---

[42] Ex. T, Piper Dec., ¶ 16.

[43] Defendants' Ex. D (hereafter "DX __"), Bates No. SPSI&SP (hereafter shortened to "SPI") 638-679.

[44] Galindo, Jr., PX D, Bates No. SPI 638-679; Jose F. Galindo, PX E, Bates No. SPI 689-702.

[45] Armando Nicasio, [PX N, Bates No. SPI 829-856]; Jorge Lara [PX J, Bates No. SPI 776-780]; Gilberto Camacho, PX C, Bates No. 593-629.

[46] Ex. T, Piper Dec., ¶¶ 86, 89.

HOWARD & HOWARD ATTORNEYS PLLC

Andres Galindo, Jr., was terminated for lack of work on January 4, 2021.[47] Nicasio was terminated on June 10, 2020 for theft.[48] Ontiveros quit on August 9, 2019[49] and was a truck driver. [Pl. Mem. at 4; PX 9]. Who are they supposed to represent? Galindo, Jr., and the other mulch grinder including himself, who worked for the Company during the relevant time-period?[50] [DX A].

Nicasio, himself and the two other "Tree Pruning" workers who worked during the subject time-period? [DX N, Bates Nos. SPI 829-856],[51] Is he supposed to represent all workers terminated for theft?[52] Who is Ontiveros supposed to represent, truck drivers which is not a category in this case? [Pl. Mem. at 4; PX 9].

Furthermore, the individual considerations and defenses that relate to each of the putative class representatives' claims render them inappropriate as class representatives. *See McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-04457-YGR, 2016 WL 879784, at *7 (N.D. Cal. Mar. 8, 2016)("Basker's individual case involves additional claims, a different legal theory, and is susceptible to different defenses . . . rendering her inadequate as a representative").

The bigger issue is that Plaintiffs' personal claims threaten the due process rights of the absent class members. This is exactly what Rule 23's "adequacy" requirement is designed to prevent. *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977) (affirming denial of class certification and explaining Rule 23(a)(4) is a strict threshold requirement for class certification because "due process requires that absent class members be adequately represented in order to be

---

[47] Ex. T,. Piper Dec. ¶ 75-78.

[48] Ex. T, Piper Dec., ¶¶ 81-82; Ex. S, Engelhardt Dep. at 5-6.

[49] Ex. T, Piper Dec., ¶ 90.

[50] Galindo, Jr., PX D, Bates No. SPI 638-679; Jose F. Galindo, PX E, Bates No. SPI 689-702.

[51] Armando Nicasio, [PX N, Bates No. SPI 829-856]; Jorge Lara [PX J, Bates No. SPI 776-780]; Gilberto Camacho, PX C, Bates No. 593-629.

[52] Ex. T, Piper Dec., ¶ 82.

17

bound by the court's judgment."); *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 6-7 (1977). Here, if Plaintiffs' individual claims are unsuccessful, absent class members could collaterally attack a judgment, arguing that the failure of those claims undermined or tainted consideration of their claims. Ontiveros as an example has no claim because he was a truck driver during the relevant period. Dismissal of his claim could prejudice a potential class of all truck drivers who worked at Defendant. Nicasio could lose his claim based on his lack of credibility and honesty due to his termination for theft.

### D. Plaintiffs Cannot Meet the Predominance Requirements of Rule 23(b)(3) Because Resolving Their Claims Requires Individualized Analysis

Plaintiffs fail to satisfy Rule 23(b)(3), which requires Plaintiffs to show that common questions of law or fact predominate over individualized questions. Fed. R. Civ. P. 23(b)(3). "Although related to Rule 23(a)'s commonality requirement, 'the predominance inquiry is far more demanding.'" *Pavone v. Aegis Lending Corp.*, No. 05 C 1529, 2006 WL 2536632, at *4 (N.D. Ill. Aug. 31, 2006)(quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)). "[T]he plaintiff must show that common issues not only exist but outweigh the individual questions. The common questions must be central to all claims.'" *Pavone,* 2006 WL 2536632, at *4 (quotation omitted).

The putative class representative Plaintiffs must also show that each element of their claims are "capable of proof at trial through evidence that is common to the class rather than individual to its members." *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 818 (7th Cir. 2012) (internal quotes omitted).

Assuming arguendo that Plaintiffs' claims share a common contention capable of class-wide resolution, which they do not, class certification would still be inappropriate because their

contentions would be overpowered by highly individualized issues central to the question of whether they have a class-wide claim. *See In Re Bank of Am.*, 286 F.R.D. at 587.

 1. **Individualized Fact Inquiries are Required to Determine Each of the Putative Class Representatives' Claims**

Resolution of the class claims under the IMWL requires the trier of fact to decide whether any of the Company's defenses applies. Given the fact intensive nature of this inquiry, courts faced with this kind of issue regularly refuse to certify such cases on a class-wide basis. For example, in a case brought against C.H. Robinson, the district court of Minnesota granted Robinson's motion to decertify the conditionally certified collective action. *See Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780 JNE/JJG, 2006 WL 2830015, at *1, *4, *10 (D. Minn. Sept. 26, 2006). In *Carlson*, the court considered whether the administrative exemption applied to positions similar to Carrier Sales positions there. *Id*. The court emphasized that the "[i]dentification of administrative work is not a straightforward exercise" and requires a "fact-intensive inquiry." *Id*. The court held that because of "substantial differences in the job duties" of the collective action members, "the administrative exemption cannot be adjudicated collectively." *Id*. If the court in *Carlson* could not resolve the applicability of the administrative exemption under the FLSA's more lenient certification standard, then the same result should follow here under Rule 23's more stringent standard.

Courts in this jurisdiction and others have denied certification of claims turning on the applicability of individualized defenses. *See, e.g.*, *Dailey,* 2014 WL 4379232, at *9 (finding individualized issues overwhelmed the administrative exemption analysis); *Hundt v. Direct Sat USA, LLC*, 294 F.R.D. 101, 106, 108 (N.D. Ill. 2013) (decertifying collective action where "variations . . . require individualized determinations"); *Hill v. R and L Carriers*, No. C 09-1907

19

CW, 2011 WL 830546, at *5 (N.D. Cal. Mar. 3, 2011) (decertifying because "[t]he requirements of the administrative exemption . . . evince the necessity of individualized inquiries").[53]

Lumping the various job functions under "laborers" ignores reality. As noted above, there are 18 different job categories at this Company and even their workers compensation carrier does not agree with such a grouping.

### 2. The Company's Pay Policies Cannot be the Basis of a Rule 23 (a) or (b) Class Action

Plaintiffs argue that the claims of the putative Plaintiff class representative and the putative class members arise from the same pay policies of the Company and that the Plaintiffs and other class members were all denied overtime wages under the IMWL by virtue of the "no overtime" policy and an improper rate calculation policy.[54] [Pl. Mem. at 11], This does not satisfy the commonality question. As the court held in *TS v. Twentieth Century Fox Television*, 334 F.R.D. 518 (ND IL 2020), a superficial common question, such as whether class members have all suffered a violation of the same provision of law, is not sufficient to satisfy the commonality requirement for class certification; rather, a prospective class must show that determination of the truth or falsity of a common contention will resolve an issue that is central to the validity of each one of the claims in one stroke under Fed. R. Civ. P. 23(a)(2). *Accord Pavone v. Meyerkord and Meyerkord, LLC,* 321 F.R.D. 314 (ND IL 2017) (superficial common questions, like whether each class member is a student or whether each class member suffered a violation of the same provision of law are not enough to satisfy commonality prerequisite for

---

[53] *Alakozai v. Chase Inv. Servs. Corp.*, No. 11-CV-09178 SJO JCX, 2014 WL 5660697, at *8 (C.D. Cal. Oct. 6, 2014) ("Determining whether CISC misclassified its Advisors as exempt is an 'individualized inquiry involving facts unique to each potential plaintiff.'"); *Spainhower v. U.S. Bank Nat'l Ass'n*, No. 2:08-CV-00137-JHN-PJWx, 2010 WL 1408105, at *4 (C.D. Cal. Mar. 25, 2010) ("where a defendant claims exemptions . . . individualized inquiries . . . are critical").

[54] Plaintiffs' arguments on Defendants' repayment of missed overtime amounts is improper in this Motion [Pl. Mem. at 3-4] as such payments were made in accordance with Rule 408 in an effort to resolve this case.

HOWARD & HOWARD ATTORNEYS PLLC

class certification); *In re Aluminum Warehousing Antitrust Litigation,* 336 F.R.D. 5 (SD NY 2020) (predominance inquiry for class certification is not satisfied simply by showing that class claims are framed by common harm suffered by potential plaintiffs).

### E.     Damages and Liability Cannot Be Determined on a Class-Wide Basis

Plaintiffs fail to address binding authority requiring a representative means of determining damages on a class-wide basis, including, specifically, *Espenscheid v. Direct Sat, USA LLC,* 873 F.3d 873, 874 (7th Cir. 2012). In *Espenscheid*, the Seventh Circuit concluded that plaintiffs could not prove damages on a class-wide basis because assessing damages required individualized proof for each class member. *Espenscheid*, 705 F.3d at 773 (proposed class of technicians who took different breaks, and worked different schedules not appropriate class). *See also*, *Farmer v. DirectSat USA, LLC*, No. 08 CV 3962, 2013 WL 2457956, at *7 (N.D. Ill. June 6, 2013) (decertifying IMWL class claims because plaintiffs failed to provide methodology for class-wide damages); *Dailey,* 2014 WL 4379232, at *9 (because there is no company-wide policy on work hours or records of hours worked, employees would have to recreate from memory the hours they worked or estimate their overtime in ways unique to each Account Rep).

Nor do Plaintiffs explain how damages could be measured using a "common methodology," as required by the Supreme Court in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). *Comcast* held that the plaintiffs' failure to provide a class-wide method or model for establishing damages meant that individual damages calculations would "inevitably overwhelm questions common to the class." *Comcast*, 569 U.S. at 34.

Like *Espenscheid*, "it's not as if [Plaintiffs all] worked from 8:00 a.m. to 5:00 p.m. and was forbidden to take a lunch break and so worked a 45- hour week," 705 F.3d at 773. There is no company policy dictating that all non-office employees start work at, or stay until, a particular

21

HOWARD & HOWARD ATTORNEYS PLLC

time. Nor is there a company practice requiring them to work a set number of hours in excess of the 40-hour work week.

Because the Company's non-office worker employees have varying approaches to hours worked, assessing damages here (if any) will require individualized determinations resulting in over 76 mini-evidentiary hearings – one for each putative class member. *See Franks v. MKM Oil, Inc.*, No. 10 cv 00013, 2012 WL 3903782, at *6 (N.D. Ill. Sept. 7, 2012) (finding no predominance in IMWL misclassification case "because the Court would have to conduct an analysis of . . . how long they worked for [the employer], and make individual calculations")(citation omitted). Such a process requires individualized inquires that would overwhelm any common issues. As Plaintiffs offer no common methodology, or for that matter, a solution, to the damages problem, this issue defeats certification.[55]

### F. The Class Action Method is not "Superior" Under Rule 23(b)(3)

Plaintiffs incorrectly claim that, based on the factors in Rule 23(b)(3)(A)-(D), the class method is superior to other methods of adjudication. As the Courts have observed, maintaining a class action alongside Plaintiffs' discrimination claims and a 10-person FLSA collective action is the epitome of the "tail wagging the dog." *McClain*, 222 F.R.D. at 577.

#### 1. Plaintiff Offers No Trial Plan That Addresses Manageability Problems

The "difficulties likely to be encountered in the management of" this case as a class action render the class action method impracticable. Fed. R. Civ. P. 23(b)(3)(A). [Pl/Mem. at 13-14], Resolving the individual employees' classifications, hours and break schedules is problem enough. But litigating these claims alongside Plaintiffs' personal claims compounds matters,

---

[55] Plaintiffs have failed to satisfy Rule 23(a) and "Rule 23(c)(4) does not exempt class representatives from the threshold requirements of Rule 23(a)." *In Re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990, at *49 (N.D. Ill. Mar. 31, 2017).

creating: conflicts of interest, due process concerns, juror confusion, and the very inefficiencies Rule 23 is designed to avoid. Plaintiffs address none of these problems, much less provide a solution or a trial plan that resolves them. *See Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625-BBC, 2011 WL 2009967, at *7 (W.D. Wis. May 23, 2011), *aff'd,* 705 F.3d 770 (7th Cir. 2013) ("plaintiffs have not proposed a trial plan that would lead to a fair result"); *Chin v. Chrysler Corp*., 182 F.R.D. 448, 454 (D.N.J. 1998) (denying certification because of no "suitable and realistic plan for trial of the class claims"); *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1190 (9th Cir.) (affirming district court's conclusion "that there was no manageable trial plan adequate to deal with individualized issues"). Thus, litigating in this "single forum" will not "create consistency" as Plaintiffs' claims it will create chaos.

### 2. Resolving The FLSA Collective Action Claims and the Rule 23 Claims Simultaneously Undercuts The Rule 23(b)(3) Superiority Factors

In this case, the tension between the opt-in and opt-out features of the FLSA and Rule 23 undermine a finding that the class action method is superior.

Here, the class method is not superior because the tension between the opt-in and opt-out nature of the two actions is exacerbated by Plaintiffs' personal claims that jeopardize the absent class members' claims. Only the ten Opt-in Plaintiffs who chose to join this litigation have accepted that risk along with the original four named Plaintiffs. That risk should not be thrust on absent class members, who chose not to opt-in to the collective action, but who would have to affirmatively opt-out of the class to avoid accepting that risk. *See De La Riva v. Houlihan Smith & Co*., 848 F. Supp. 2d 887, 894 (N.D. Ill. 2012) ("The court recognizes that handling the FLSA and IMWL claims in a single proceeding would yield some efficiencies. But those efficiencies are far outweighed by the [other] considerations.").

Moreover, in *Warner v. Little John Transportation Servs., Inc.*, No. 5:19-CV-05042, 2019 WL 3331797, at *1 (W.D. Ark. July 24, 2019), the court held that plaintiff, a freight agent, could not demonstrate that the class method was superior, after it previously granted conditional certification under the FLSA. The court held that receiving a second notice of a class action that requires no opting-in, would confuse those who opted-in and those considering it. *Id*.

The superiority requirement is also not met because the Court has compelling grounds to decline supplemental jurisdiction over the IMWL class claims. Under § 1367(c), a district court may decline supplement jurisdiction if, among other things, "the claim substantially predominates over . . . claims over which the district court has original jurisdiction," or if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Here, the class IMWL claim "substantially predominates" over the FLSA claim because a 60-plus member Rule 23 class dwarfs the 10-member FLSA collective action by a ratio of 6:1. 28 U.S.C. § 1367(c). This is like the ratio in *De Asencio v. Tyson Foods, Inc*., where the Third Circuit held that the "federal action [was] an appendage to the more comprehensive state action." 342 F.3d 301, 312 (3rd Cir. 2003). Finally, because a single proceeding creates conflicts of interest, due process concerns, juror confusion, and inefficiencies, the Court should find "exceptional circumstances" in which "compelling reasons" exist to

decline jurisdiction. 28 U.S.C. § 1367(c). In sum, it is not sensible to litigate all theories in a single federal proceeding.[56]

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Renewed Motion for Class Certification in its entirety.

Respectfully submitted,

**STEVE PIPER & SONS, INC., AND STEVE PIPER, INDIVIDUALLY**

Dated: April 26, 2023

By: /s/ *L. Steven Platt*
    One of its Attorneys

L. Steven Platt (ARDC No. 3122005)
**Howard & Howard Attorneys PLLC**
Attorney Firm No. 46359
200 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604-2461
Phone: (312) 372-4000 | Fax: (312) 939-5617
Email: LPlatt@HowardandHoward.com

*Attorneys for Steve Piper & Sons, Inc., and*
*Steve Piper, Individually*

---

[56] Plaintiffs also raise a red herring in their memorandum accusing Defendants of arbitrarily not deducting taxes from overtime pay. [Pl/ Mem.; at 2]. First, the Plaintiffs cannot bring a tax claim in a IMWL or IWPCA case as a class claim or any other. Second, this was done when it was done and not in all cases, because the employees requested it. *See* Ex. U, Bates Nos. Piper H2 323-339; Dep. of Holly Morlock, Ex. R, at 18-19. They also claim that year end bonuses should be included in an improper rate calculation class. [Pl. Mem. at 5]. This only works if the bonuses were part of the employees' regular pay. They were not. They were completely discretionary with the ultimate discretion resting with Piper. [Piper Dep. 1, Ex. Q at 257-259; Ex. T, Piper Dec. ¶¶ 182-187. Plaintiffs have presented no testimony to the contrary nor could they because the ultimate decision on bonuses was Steve Piper's alone.

HOWARD & HOWARD ATTORNEYS PLLC

## CERTIFICATE OF SERVICE

The undersigned being an attorney licensed to practice before this Court and in Illinois, hereby certifies that the foregoing was served on all parties of record through the Court's ECF system.

Dated:  April 26, 2023                    /s/ *L. Steven Platt*

L. Steven Platt (ARDC No. 3122005)
**Howard & Howard Attorneys PLLC**
Attorney Firm No. 46359
200 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604-2461
Phone: (312) 372-4000
Fax: (312) 939-5617
Email: LPlatt@HowardandHoward.com

*Attorneys for Steve Piper & Sons, Inc.*

4867-4218-8894, v. 3